UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LUKE CLYDE TEIXEIRA, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | A-22-CV-1155-RP |
| | § | |
| PATRICK O'DANIEL, et al., | § | |
| DEFENDANTS. | § | |

## ORDER

Before the Court are Plaintiff Luke Clyde Teixeira's complaint filed pursuant to 42 U.S.C. § 1983 (ECF No. 1), Defendants' Motion to Dismiss (ECF No. 10) and Plaintiff's Response thereto (ECF No. 11.) Plaintiff is proceeding pro se and in forma pauperis. Upon review of the parties' arguments and pleadings, the Court grants Defendants' Motion to Dismiss.

## I. Statement of the Case

Plaintiff is currently confined at the McConnell Unit of the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). Plaintiff filed the instant civil-rights complaint in November 2022, naming the following defendants: (1) all members of the Texas Board of Criminal Justice (TBCJ)—Patrick O'Daniel, Derrelynn Perryman, Larry Miles, E.F. Mano De Ayala, Molly Francis, Faith Johnson, Sichan Siv, Eric Nichols, and Rodney Burrow; (2) Oscar Mendoza, Deputy Executive Director of TDCJ; (3) Bobby Lumpkin, Director of TDCJ-CID; and (4) all members of the Director's Review Committee (DRC) at TDCJ—Timothy Fitzpatrick, Tammy Shelby, Candice Anders, Randall Clarke, Myron Waddle, Tracy Hutto, David Blackwell, and Jerry Sanchez.

Plaintiff alleges that, in June 2021, Defendants enacted Board Policy (BP) 03.91, which amended the definition of "sexually explicit images" such that images prisoners could previously

1

receive in TDCJ were now prohibited. In September 2022, Plaintiff's significant other sent him photographs—two of which showed her naked buttocks—and these two pictures were prohibited because of BP 03.91. Plaintiff alleges prisoners regularly receive commercial publications with images that violate BP 03.91, while he and other inmates are not permitted comparable images of their significant others. Plaintiff claims the revision and implementation of BP 03.91 violates his First Amendment right to intimate association and his Fourteenth Amendment right to equal protection of the laws; that BP 03.91 violates the Fourteenth Amendment because it is not uniformly enforced; and that it violates the First and Fourteenth Amendments because the policy cannot be followed without prohibiting 90% of commercial publications and TV programming. Plaintiff also claims the implementation of the policy denied him of his property, i.e., the two pictures. He seeks declaratory relief, injunctive relief, and punitive damages. (ECF No. 1.)

Defendants move to dismiss the complaint, arguing Plaintiff's claims fail to state a claim upon which relief may be granted. Specifically, Defendants argue (1) Plaintiff has not alleged the personal involvement of defendants Lumpkin or Mendoza; (2) Plaintiff fails to state a claim for the violation of his First Amendment rights; (3) Plaintiff fails to state a claim under the Fourteenth Amendment for violations of his rights to procedural due process, substantive due process, or equal protection; (4) TDCJ's policy barring conjugal visits is well-established; and (5) to the extent Plaintiff brings any claims against them in their individual capacities, the defendants are entitled to qualified immunity. (ECF No. 10.) Plaintiff has filed a response, restating his allegations and claims from his complaint. (ECF No. 11.)

## II. Discussion & Analysis

1. Factual Background

     In 2001, Plaintiff was convicted of two counts of aggravated sexual assault of a child and sentenced to life imprisonment for each count. He alleges that, since his conviction, he has engaged in dozens of activities to rehabilitate and improve his character, including accepting sole responsibility for his actions; engaging in victim/offender mediations; participating in and graduating from numerous college courses and other educational programs; participating in numerous TDCJ rehabilitative programs; and becoming a peer college tutor for Lee College.

     In 2021, Plaintiff began a relationship with Genealen Teixeira. In early 2021, Plaintiff alleges that Defendants Mendoza and Lumpkin began discussing ways to reduce the trafficking and trading of commercially printed sexually explicit images within TDCJ correctional facilities. In April and May of 2021, Plaintiff states Mendoza and Lumpkin discussed this issue with numerous family members and family organizations where they specifically stated the new rules would not affect photographs from family members.

     The revised Board Policy 03.91, entitled "Uniform Inmate Correspondence Rules," (hereinafter "the Correspondence Policy") was enacted on June 25, 2021, and defines "sexually explicit image" as follows:[1]

> "Sexually Explicit Image" refers to material in publications, photographs, drawings, or any type of image, which depicts sexual behavior, is intended to cause sexual excitement or arousal, or shows: frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s); the genitalia, anus, or buttocks, or partially covered buttocks of either gender; the discharge of bodily fluids in the context of sexual activity; or sexual behavior from any vantage point. The chests of infants and pre-pubescent children are not considered breasts, unless further restricted by a treatment program policy.

---

[1] Defendants attached a copy of the Correspondence Policy to their Motion to Dismiss. The Court may review the documents attached to a motion to dismiss where the complaint refers to the documents and they are central to the claim. *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

(ECF No. 10-1 at 5.)

In mid-2021, Ms. Teixeira sent Plaintiff numerous photographs, some of which were sexually provocative, but not dissimilar to photographs published in fashion magazines. In September 2022, Ms. Teixeira again sent him photographs; this time, two of the photographs were prohibited as sexually explicit images because they showed her uncovered buttocks. Plaintiff appealed the denial of these images to the DRC, which denied his appeal in October 2022. He thereafter filed a Step 1 grievance, making the same allegations he raises here; the grievance was returned as not grievable. (ECF No. 1-2 at 13-14.) Plaintiff filed this federal complaint one month later. (ECF No. 1.)

2. Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face. FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678.

In deciding a motion to dismiss under Rule 12(b)(6), a court will accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Raj v. La. State Univ.*, 714 F.3d 322, 329-30 (5th Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679. Further, a plaintiff's factual allegations must establish more than just the "sheer possibility" a defendant has acted unlawfully. *Id.*; *Twombly*, 550 U.S. at 555 (factual allegations must be

enough to raise a right to relief above the speculative level) (citation omitted). Determining a complaint's plausibility is a "context-specific task," but if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct" the complaint has failed to meet the pleading standard under Rule 8(a)(2). *Iqbal*, 566 U.S. at 678.

### 3. Plaintiff's First Amendment Claims

Plaintiff argues the Correspondence Policy violates his rights under the First Amendment, particularly his right to intimate association. A prisoner "retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Further, while the right to intimate association is not "altogether terminated by incarceration or is always irrelevant to claims made by prisoners," it remains "among the rights least compatible with incarceration" and therefore "[s]ome curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted). The Supreme Court has concluded that prison policies infringing on constitutional rights are valid if the policies are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Defendants argue that Plaintiff's First Amendment challenge to the Correspondence Policy fails to state a claim because, under Fifth Circuit precedent, prison policies aimed at preventing the dissemination of sexually explicit images are reasonably related to legitimate penological interests. Defendants also point to three federal district courts that recently granted motions to dismiss prisoner complaints challenging the Correspondence Policy's restriction on sexually explicit images. Finally, Defendants argue that, even if the Correspondence Policy is not being uniformly applied, this does not implicate the First Amendment.

In response, Plaintiff argues the district court cases Defendants refer to are factually distinguishable from Plaintiff's case, because he seeks access only to sexually explicit images of his significant other. He further states that he is not challenging the definition of sexually explicit images in the Correspondence Policy, but rather claiming the Correspondence Policy infringes on his right to participate in an intimate relationship, and on the right of his significant other to send him intimate pictures of herself. (ECF No. 11 at 3-5.)

In *Thompson v. Patteson*, the Fifth Circuit held that prison officials may limit prisoners' access to sexually explicit material to further the prison's legitimate interest in preventing deviate, criminal sexual behavior in the prison population. 985 F.2d 202, 205-06 (5th Cir. 1993). In *Thompson*, the plaintiff challenged the denial of several publications—which officials said included graphic depictions of sex with a child and lesbian sex—under TDCJ correspondence Rule 3.9.10.6, a precursor to the Correspondence Policy. The *Thompson* court noted that the constitutionality of Rule 3.9.10.6 had been litigated in *Guajardo v. Estelle*, 580 F.2d 748 (5th Cir. 1978), which resulted in a settlement agreement directing prison officials as follows: "'Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through proper administrative channels.'" *Id.* at 206 (quoting *Guajardo*, 580 F.2d at 762.)

The *Thompson* court held that *Guajardo*, along with the Supreme Court opinions in *Pell* and *Turner*, foreclosed the plaintiff's claim. Specifically, by authorizing the procedure detailed above, the *Guajardo* court had struck a balance between a prison's interest in rehabilitation and security and a prisoner's First Amendment rights to sexually explicit images. The court further

concluded that the *Guajardo* decision fit easily within the framework established by *Turner and Pell*, i.e., Rule 3.9.10.6 was "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. The Fifth Circuit recently reapplied *Thompson* in affirming the dismissal of a plaintiff's claims challenging a prison's prohibition of sexually explicit images. *See Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (citing *Thompson* in concluding that Plaintiff's claim alleging prison officials violated the First Amendment by prohibiting certain sexually explicit images was frivolous).

Plaintiff's claims are foreclosed by *Thompson*. Not only are Plaintiff's claims materially similar to those dismissed in *Thompson* and *Stroble*, but the Correspondence Policy has the same inspection and delivery procedure as the one described in *Guajardo* and reaffirmed in *Thompson*.[2] Plaintiff attempts to avoid this conclusion by arguing his claims are focused on his First Amendment right to intimate association. But, again, the right to intimate association is "among the rights least compatible with incarceration." *Overton*, 539 U.S. at 131. And, regardless, the Fifth Circuit has held that policies which limit a prisoner's access to sexually explicit materials are reasonably related to legitimate penological interests. *See id.* at 132 (refraining from determining the contours of the right to intimate association in the prison context because the policy in question was reasonably related to legitimate penological interests). Plaintiff's right to intimate association cannot overcome this legal hurdle.

---

[2] The Correspondence Policy states that all general correspondence shall be inspected by unit mailroom staff. In the event contraband is found, it will be removed, if possible; if not, the correspondence will not be delivered to the prisoner. Finally, if correspondence is rejected, "[t]he inmate and the sender or addressee shall be provided a written statement of the disapproval and a statement of the reason for disapproval within three business days after receiving the correspondence. The notice shall be given on Correspondence Denial Forms. The inmate shall be given a sufficiently detailed description of the rejected correspondence to permit effective use of the appeal procedures. The inmate, sender, or addressee may appeal the mailroom staff's decision through the procedures outlined in this policy. The inmate or sender may submit a written argument as to why the item should not be denied for the DRC's consideration. BP-03.91(IV)(A), (B), (D). (ECF No. 10-1 at 12-13.)

Plaintiff finally claims that prison officials allow other prisoners to receive publications that contain substantially similar images to the photographs he was denied. However, prison rules "necessarily confer a certain degree of discretion on prison authorities" to determine what constitutes impermissible sexually explicit material. *Thompson*, 985 F.2d at 207. Moreover, the failure of Defendants to follow the Correspondence Policy, does not, in itself, amount to a constitutional violation. *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009). Accordingly, Plaintiff's First Amendment claim fails as a matter of law.

4. Fourteenth Amendment Claims

Plaintiff next claims that the Correspondence Policy violates his rights under the Fourteenth Amendment because (1) it discriminates against the class of prisoners who have significant others, (2) it is not uniformly enforced, and (3) it cannot be uniformly enforced. Plaintiff also claims prison officials denied him his property by confiscating the pictures. Defendants argue that Plaintiff's claims fail as a matter of law.

   *a. Equal Protection*

Plaintiff claims the restriction of sexually explicit images under the Correspondence Policy violates the Fourteenth Amendment's Equal Protection Clause because it discriminates against the class of prisoners who have significant others and would like intimate pictures of them. Defendants argue that this claim fails because the Correspondence Policy discriminates against types of images, not classes of persons.

The Fourteenth Amendment's Equal Protection clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To maintain a claim for an equal protection violation, Plaintiff must show "'two or more classifications of similarly situated

persons were treated differently'" under the Correspondence Policy. *See Duarte v. City of Lewisville, Tex.*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012)). However, "'if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws.'" *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)). Further, "disparate impact alone cannot suffice to state an Equal Protection violation; otherwise, *any* law could be challenged on Equal Protection grounds by whomever it has negatively impacted." *Id.* (citing *Washington v. Davis*, 426 U.S. 229, 246-50 (1976)).

Plaintiff alleges the Correspondence Policy discriminates against prisoners with significant others who wish to receive intimate photographs from them and prisoners who do not have significant others. A similar claim was raised in *Thompson*, where the plaintiff alleged he was being denied access to certain publications while other prisoners were able to receive different publications with similar content. The Fifth Circuit concluded his equal protection claim "had no arguable merit" since the complaint "in substance alleges discrimination *against the publications* he wishes to procure" rather than discrimination against a class of people. *Thompson*, 985 F.2d at 207. Likewise, the Correspondence Policy does not discriminate against Plaintiff, or the class of prisoners who have significant others; it prohibits sexually explicit images. Accordingly, because Plaintiff cannot show that the Correspondence Policy discriminates against classes of people, he cannot state a claim for a violation of the Equal Protection Clause.

*b. Substantive Due Process*

Plaintiff next alleges that the Correspondence Policy violates his Fourteenth Amendment rights because it is not uniformly enforced and cannot be uniformly enforced without the prisons prohibiting over 90% of publications and television shows. The Court construes Plaintiff's allegations as claiming the Correspondence Policy violates his substantive due process rights under the Fourteenth Amendment.

Plaintiff fails to state a claim for a violation of substantive due process "because resort to a generalized remedy under the Due Process Clause is inappropriate where a more specific constitutional provision provides the rights at issue." *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020). "In those situations, the specific provision, 'not the more generalized notion of 'substantive due process,' better guides analysis of a plaintiff's claims." *Id*. (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)). Plaintiff's rights are protected under the First Amendment and the Court already analyzed his claim alleging selective enforcement of the Correspondence Policy. Accordingly, Plaintiff fails to state a claim for a violation of substantive due process under the Fourteenth Amendment.

*c. Procedural Due Process*

Finally, Plaintiff appears to claim that Defendants violated his right to procedural due process under the Fourteenth Amendment by confiscating his property, i.e., Ms. Teixeira's photographs. This claim fails for two reasons. First, prisoners do not have a property interest in contraband. *See Sullivan v. DeRamcy*, 460 F. App'x 374, 375 (5th Cir. 2012). Second, even if Plaintiff did have a property interest in the pictures, he received all the process he was due. When a deprivation is authorized by an official policy, a prisoner must be afforded some combination of notice prior to the deprivation and an opportunity to be heard. *See Zinermon v.*

10

*Burch*, 494 U.S. 113, 127-28 (1990); *Stotter v. Univ. of Tex. San Antonio*, 508 F.3d 812, 821-22 (5th Cir. 2007).

The Correspondence Policy provides both notice when a piece of correspondence is restricted and an opportunity for the prisoner to appeal the denial of the correspondence to the DRC. (ECF No. 10-1 at 12-13.) As stated in his complaint, Plaintiff availed himself of this process by appealing the denial of the photographs to the DRC, which then denied his appeal on October 20, 2022. (ECF No. 1 at 7.) Accordingly, this claim also fails to state a claim upon which relief can be granted.[3]

### III. Conclusion

It is therefore **ORDERED** that Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED**.

SIGNED this 25th day of April, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[3] In his response to Defendants' Motion to Dismiss, Plaintiff explicitly renounces any claims based on conjugal visits, and also states he is not suing anyone in their individual capacities. (ECF No. 11.) Accordingly, the Court has not addressed the conjugal visit allegations or Defendants' right to qualified immunity.